### HUTCHINGS et al. v. CALEDONIAN INS. CO. OF SCOTLAND.

Circuit Court of Appeals, Fourth Circuit. October 15, 1929.

No. 2851.

Davis D. Moise, of Sumter, S. C., and Henry E. Davis, of Florence, S. C. (Lee & Moise, of Sumter, S. C., on the brief), for appellants.

Joseph L. Nettles, of Columbia, S. C. (R. E. Whiting, of Columbia, S. C., on the brief), for appellee.

Before NORTHCOTT, Circuit Judge, and GRONER and SOPER, District Judges.

GRONER, District Judge. This is an action begun by Hutchings and Pratt, copartners, against Caledonian Insurance Company for the recovery of $8,000 on a policy of insurance commonly known as "use and occupancy insurance," under the terms of which defendant, as insurer, agreed if the tobacco warehouse, described in the policy, should be destroyed or damaged by fire so as to necessitate a total or partial suspension of business, the insurer would be liable for the loss of profits at the rate of $200 a day for a definite period.

In July, 1927, Hutchings, individually, had leased a tobacco warehouse in the city of Sumter, S. C., for the season 1927, with the purpose of conducting therein daily auction sales of leaf tobacco. On the following August 24 a fire occurred which totally destroyed the building and put an end to the business for the current season. Prior to the fire, Hutchings had applied to the local agents of defendant company for both fire and occupancy insurance, and three policies of fire insurance and the occupancy policy—the subject of this suit—were written in the usual way, but the policies themselves were never delivered, but were retained by the agent of the insurer. Shortly thereafter Hutchings, finding he needed financial assistance to carry on the business, entered into a partnership with Pratt, and the business thereafter and until the fire was conducted in the name of and for the benefit of the partnership. A few days after the policy was written, and prior to the fire, Hutchings and Pratt notified the agent who had written and retained the policy of the formation of the partnership, and requested that the insurance be transferred from Hutchings to the partnership, and this the agent agreed to do. At the trial in the lower court, the agent testified: "At that time an agreement was

made between me, representing the Caledonian Insurance Company, and Messrs. Hutchings and Pratt, that they wanted the insurance and that I would look after it. It was a firm and binding agreement. I was representing the Caledonian Insurance Company. At that time, to the best of my knowledge and belief, the insurance policy was in my office, and remained there until after the fire. * * * Mr. Hutchings told me to do what was necessary to protect the copartners, * * * and I, representing the company, agreed to make any necessary endorsements. * * * I have been representing the Caledonian Insurance Company for a good many years, and have transferred policies before from one person to another. It was the common practice. * * * The method is by endorsement—one copy of the endorsement is sent to the company, one is put on our records, and one on the policy. All the fire policies were transferred from Hutchings to Hutchings and Pratt, co-partners, by endorsement." He explained the failure to transfer the use and occupancy policy as wholly due to inadvertence on his part, and this he said was not discovered until after the fire.

The complaint set out the facts stated above, and prayed for judgment in behalf of the partnership for the amount of the loss. The policy to Hutchings was written on the standard form, and contained the usual condition to the effect that no waiver of any provision of the policy should be valid unless in writing added or attached to the policy, and the further condition that, unless by agreement in writing added thereto, the policy should be void if the interest of the insured was other than unconditional and sole ownership. The insurance company defended, first, on the ground that no written waiver of any provision of the policy was made; and, secondly, that the policy was void and unenforceable because of change of ownership of the subject-matter insured from Hutchings to Hutchings and Pratt as copartners. At the trial in the lower court, evidence was offered to show the writing of the policy to Hutchings as the insured; its retention by the agent of the insurer; the request for the transfer of the insurance to the partnership; the agent's assent to the transfer and his agreement to make the proper indorsement upon the policy; his authority to act for the insurance company; and that through inadvertence alone the transfer and indorsement were not made.

At this stage of the case, the learned District Judge, on motion of the insurance company, rejected the plaintiff's evidence in the respects mentioned, and directed a verdict for the defendant on the ground that the policy sued on, being in the name of Hutchings and not in the name of the partnership, the latter could not maintain an action at law to recover the insurance money. In the recent case of Great American Ins. Co. v. Johnson (C. C. A.) 25 F.(2d) 847, which was an action at law against an insurance company on a policy of insurance mistakenly written in the name of a corporation rather than in the name of certain of its stockholders, the real owners of the property insured, we pointed out at some length the fundamental objection to the right of one not a party, but with an equitable interest, to sue at law to enforce a contract made in the name and on behalf of another.

In this case the policy sued on was in writing and for the benefit of Hutchings, as sole owner of the property insured. Parol proof, in an action at law, of the transfer to the partnership prior to the fire, was clearly inadmissible. Great American Ins. Co. v. Johnson, supra, and cases cited there. If that were all, we should, perhaps, be obliged to affirm, but, when the decision of the lower court to reject the evidence offered to sustain the plaintiff's case was announced, counsel asked that they be then allowed to introduce evidence to reform so that the true intent and meaning of the parties to the contract might be shown. This the lower court, we think erroneously, declined to do.

We are disposed to construe the motion as within the intent of 274a of the Judicial Code (28 USCA § 397), in which it is provided that "In case any United States Court shall find that a suit at law should have been brought in equity or a suit in equity should have been brought at law, the court shall order any amendments to the pleadings which may be necessary to conform them to the proper practice." As it was apparent when the motion to reform the pleadings was made that the pending action could not be maintained until the policy should itself be reformed, and since in a federal court this may only be done in a proceeding in equity, it seems to us to follow that the motion should have been granted.

If, in such a proceeding, it is made to appear by convincing evidence that the insurance policy in question was not the real contract between the parties, that subsequent to its execution and prior to its de-

livery to the insured, the insurer recognized the change in ownership and agreed to insure the partnership, and to note the change by indorsement in writing on the policy, and that through mutual mistake this was not in fact accomplished, equity will intervene, and under the circumstances reform the contract and grant relief in accordance with the true meeting of minds. And we find nothing in Northern Assur. Co. of London v. Building Association, 183 U. S. 308, 22 S. Ct. 133, 46 L. Ed. 213, or Penman v. St. Paul Fire & Marine Ins. Co., 216 U. S. 311, 30 S. Ct. 312, 54 L. Ed. 493, to the contrary. The former was an action on an insurance policy in which the insurer defended on the ground that a condition of the policy had been violated. Plaintiff claimed that this condition had been waived, and the Supreme Court held the waiver ineffective because not made in accordance with the terms of the policy. In a subsequent proceeding in equity on the same policy, and between the same parties, to reform the same contract, it was held by the Supreme Court of Nebraska (73 Neb. 149, 102 N. W. 246) that such a suit could be maintained even after the termination of an unsuccessful action at law to recover on the unreformed contract, and a decree reforming the contract was affirmed, and, on appeal to the Supreme Court (203 U. S. 106, 27 S. Ct. 27, 51 L. Ed. 109), it was held that the judgment in the original law action was not a bar to the relief sought in the subsequent equity suit. See, also, Hartford Fire Ins. Co. v. Nance (C. C. A.) 12 F. (2d) 575; Hartford Fire Ins. Co. v. Jones (C. C. A.) 15 F.(2d) 1; Forkner v. Twin City Fire Ins. Co. (C. C. A.) 19 F.(2d) 419.

The Penman Case was an action on an insurance policy defended by the insurance company on the ground that the policy was avoided because the insured allowed a dangerous explosive to be kept on the premises contrary to the precise terms of the policy. The insured claimed that this provision of the policy was ineffective because the agent of the insurer knew of the presence of the explosive when the policy was written, and impliedly consented thereto. The Supreme Court held that this was of no consequence because no agent had power to change or modify the contract except in accordance with its terms. But this decision, as we have already stated, has no effect on the question now under consideration.

In a proceeding in equity brought to reform the policy, the decision on the issue thus raised would not turn upon the authority of the agent to waive a condition or stipulation of the policy, for that question would not be involved, as there is no condition or stipulation in the policy providing that it, or the insurance carried under its terms, may not be transferred to a subsequent purchaser of the property, nor is any waiver required to effect this result. On the contrary, it appears this was within the power and authority of the agent, and was habitually done. If it had been that the application for insurance was then first made, the acceptance of same and the agreement of the agent would have been binding on his principal even though the policy was never written. Relief Fire Insurance Co. v. Shaw, 94 U. S. 574, 24 L. Ed. 291. From this it must follow that the agent possesses the power to accept on behalf of his principal the surrender of a policy, and to bind his principal as to reissue or transfer, irrespective of what the agent may actually do or fail to do in respect thereto. The point, in our opinion, would not, in such a case, turn upon the question of waiver at all. It would be rather a question of estoppel for failure to carry out a promise or obligation assumed by one of the parties, and upon which the other relied to his injury. It would thus present a matter of right rather than a matter of grace or favor. As we have already seen, the agent in this case had authority from the insurer to make the transfer by written indorsement. He did it in the case of the fire insurance policies. He thought he had done it in the case of this policy. The insured likewise thought he had done it, and out of his failure to carry out his contract a mutual mistake arose which we think will fully justify invoking the equitable rule that what was agreed to be done shall be taken as having been done. This view seems to be in accord with the current of authority. See Columbia Ins. Co. v. King (C. C. A.) 30 F.(2d) 887; Boston Ins. Co. v. Hudson (C. C. A.) 11 F.(2d) 961; Eames v. Home Insurance Co., 94 U. S. 621, 24 L. Ed. 298. Indeed there is respectable authority for the proposition that a proceeding in equity, to compel a reformation of the policy or the attaching of an indorsement to it, is not necessary under certain circumstances, when an authorized agent of an insurance company consents to make a written indorsement upon a policy, in order to effectuate a change therein, but fails to make the indorsement as the result of inadvertence. Twin City Fire Ins. Co. v. Stockmen's National Bank (C. C. A.) 261

F. 470; Corporation of Royal Exchange Assurance Co. v. Franklin, 158 Ga. 644, 124 S. E. 172, reported with an extensive note in 38 A. L. R. 626; 26 Corpus Juris, 307, § 380. But we think that in the case at bar a proceeding in equity is required because "the contract could not be recovered upon as it stood" (Northern Assur. Co. v. Grand View Bldg. Ass'n, 203 U. S. 106, 107, 27 S. Ct. 27, 51 L. Ed. 109), or an action at law maintained by one not named as insured thereunder.

In this view of the case, the judgment in favor of the defendant will be reversed, the case restored to the docket with leave to the plaintiffs to amend their pleadings as they may be advised, and, when so amended, removed to the equity side of the court for further proceedings in accordance with this opinion.

Reversed.