### JONES et al. v. GENERAL FIREPROOFING CO.

(Circuit Court of Appeals, Sixth Circuit. February 13, 1919.)

No. 3051.

PATENTS ⊛⟲165—CONSTRUCTION OF CLAIMS—IMPORTING ELEMENTS NOT SPECI-
FIED.

The rule that an element expressly specified in one claim of a patent
should not be read into another in which it is not specified is intended
to apply only where such element alone differentiates the two claims.

On motion for rehearing and to reopen. Denied.
For original opinion, see 254 Fed. 97, —— C. C. A. ——.

Before KNAPPEN and DENISON, Circuit Judges, and SES-
SIONS, District Judge.

PER CURIAM. An application for rehearing demonstrates inac-
curacy in the opinion filed, and necessitates further discussion.

It was the theory of the opinion that the diagonally edged support
is the essence of the invention, and that the language of the claims
which we sustained justifies, and the whole case requires, the conclu-
sion that such support should be implied as an element in these claims.
It is now pointed out that this diagonal support is expressly specified in
certain other claims not in suit, and hence that it should not be read
into claims where it is not named. The rule invoked does not go to
the extent which requires its application here. We suppose the reason
of the rule is that each claim is supposed to have a distinguishing char-
acteristic, and that no construction should be unnecessarily adopted
which would cause two claims to be identical. From this reason, it
follows that the prohibition is directed, not broadly against importing
into one claim a specific limitation expressed in another, but, when
stated with precision, is aimed against importing a limitation of that
character when, by it alone, the two claims come to be different. If we
apply the rule thus stated to the present case, and, for example, to
claim 3, and compare it with claim 2, which bears the closest resem-
blance to claim 3, we must concede that claim 2 expressly calls for the
diagonal support by saying "the edge of the support being arranged at
an angle to the direction of the feed," while claim 3 includes it only
by the implication arising from the call for feeding the sheet length-
wise and expanding the sheet by drawing it away from the plane of
the support, thus employing the support with the diagonal edge; but
we further observe that claim 2 calls for "means for continuously
drawing the sheet over the edge of the support," while claim 3 calls
for "means for drawing it away from the plane of the support," and
that claim 3 specifies, while claim 2 does not, "means for continuously
feeding the sheet lengthwise." These distinctions may not be very
substantial; but the draftsman intended them to have distinguishing
effect, and we are not inclined to overlook them for the sake of com-
pelling what we think a substantially wrong result. With respect to

⊛⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

this particular question, there is even less objection to importing this same element—the diagonal edge—into claim 9. There is no other claim closely similar to 9 which contains the limitation in express form.

In this connection, two models have been submitted with the rehearing application which are designed to show that a structure can be made fully responding to claim 3 and yet having no diagonal edge support. As to that model which illustrates the progressive operation, it is to be observed, first, that for the missing diagonal support it provides an approximate substitute in the form of two points of support diagonally disposed; and, second, that the claim by its terms fairly contemplates expansion as the sheet is drawn off the support; while in the model the sheet "passes off the same" (the support) mostly unexpanded. We are not satisfied that there was error in our construction of the claim in this respect.

The opinion stated that claim 9 [1] was not rejected on reference to Pitkin; and hence we gave no consideration to the alleged limiting effect of such rejection. This statement was not accurate. Claim 9 was not rejected on reference to Pitkin at the same time that several other claims were, nor was claim 9 amended to distinguish from Pitkin by inserting the "drawing" feature; but at a later time, and when claim 9 had taken the same form as when issued, excepting that it did not contain the word "marginal," it was so rejected, and the word "marginal" was then inserted to avoid the reference. It follows that the phrase "holding a longitudinal marginal portion of the unexpanded sheet in a fixed plane" must be deemed to have been adopted by Curtis in the sense necessary to distinguish his device from Pitkin, and if, when used in this sense, it will also distinguish the patented machines from the defendant's, the claim cannot be so construed as to cover the defendant's device. Pitkin held an entire sheet upon the plane surface, except as the edges were forced away; he, therefore, by inclusion, held a "longitudinal portion" of the sheet. Curtis gripped and held both longitudinal edges of his sheet and began his expansion at the center. However, claim 9 we think clearly intended to refer to and cover the treatment of one-half of the Curtis sheet. It was foreseen that, without departing from the basic principle, one margin only might be held and the other margin proceed into expansion. Other claims refer specifically to the holding of both margins, and we do not doubt that claim 9 was intended to describe the handling of one-half of the sheet shown by the drawings, without including the simultaneous, similar handling of the other half. Hence, it is apparent that in the Curtis device, as in the defendant's, one entire longitudinal margin of the sheet is firmly held while expansion progresses upon the other side; while, in the Pitkin machine, the whole central part is held while both sides are expanded. It is true enough that if we draw an imaginary line through the center of the Pitkin sheet and consider it as

[1] Claim 9: "The machine for expanded previously slitted sheet metal wherein are combined means for feeding the sheet longitudinally and continuously, with means for holding a longitudinal marginal portion of the unexpanded sheet in a fixed plane and means for deflecting the adjacent longitudinal portion of the sheet from said plane and simultaneously expanding it."

two units, as we do in the Curtis sheet, we will find that Pitkin holds one longitudinal margin of each half sheet; but, to do this, we must put a construction upon Pitkin not recognized either by Curtis or by the Patent Office; because, if they had viewed Pitkin in that light and if they also intended—as we think they certainly did—that claim 9 should refer to one-half of the Curtis sheet, the force of Pitkin as a reference would not have been avoided by the amendment inserting the limitation to "marginal." Here, again, we are not inclined to give an overstrict application to rather technical reasoning when the effect is to reach an unsatisfactory result.

The opinion said that claim 5 should also be construed to include the limitation to the diagonal support. This seems to have been an inadvertent reading of claim 6 instead of claim 5. Claim 6 contains this express limitation; claim 5 is the same, verbatim, excepting the limitation. It, therefore, most certainly cannot be read into claim 5; and claim 5 must be classed with 1, 8, and 10, and be considered invalid. Claim 6 was at first sued upon, but later plaintiff omitted it from the list of those upon which he intended to depend. This was done because he adopted a theory of the respective meanings of 5 and 6 which we have not been able to approve, and which seems to have been nothing more than that hypothesis which is not an election.[2] We do not now see that it is important, in any practical way, whether claim 6 is added to 3 and 9 to serve as the basis of the decree. If plaintiff thinks it is, application may be made to the court below to shape the decree so as to include claim 6, and the court below will grant or refuse the application, or grant it upon terms as to a further opportunity for defendant to be heard thereon—all as to that court may seem proper.

There is no occasion to open the case at this stage for further proof regarding defendant's new machine. Whether that infringes may be considered in the court below in any way in which such questions are commonly presented.

Upon what may be considered the main, meritorious question, reargued and presented most exhaustively, we are not convinced that we reached the wrong conclusion. We think the substance of Curtis' invention lay in the diagonal supporting edge over which the longitudinally moving slitted sheet was deflected and expanded at an angle to the plane of the sheet, and that defendant's device is rightly thus described. We also adhere to the view that the sheet is "drawn" over the edge in the fair sense which the whole record requires should be given to that word in the patent.

The application for rehearing and the motion to reopen are denied.

[2] Mr. Justice Holmes in Northern Co. v. Grandview Co., 203 U. S. 106, 108, 27 Sup. Ct. 27, 51 L. Ed. 109.