The case is before the court on bill, answer in lieu of plea, replication and stipulation of facts. On February 4th, 1939, the defendant employed the complainant as its eastern division manager for an indefinite term and agreed to pay him certain compensation. At complainant's request, the defendant, under date of February 7th, wrote complainant a letter confirming the agreement and setting forth its terms. Complainant continued in the employ of the defendant until December 31st, 1941. The bill shows that the confirmatory letter, either through oversight or by the defendant's deliberate intention, failed accurately to state the terms of employment; that complainant did not observe this fact until January, 1942. He prays that the written contract be reformed so as to state the real agreement between the parties.
The mere circumstance that a writing has been made by one of the parties to a contract and communicated to the other, does not make that writing the sole memorial of the transaction. The parol evidence rule does not apply unless the parties adopted the writing as their contract. In the absence of such adoption, the contract which is enforceable *Page 89 
at law is the verbal agreement, proveable by the oral testimony of witnesses according to their recollection, and there is no written contract which need be reformed. 2 Williston, Contracts§ 633; 5 Wigmore, Evidence § 2429. However, the parties before me concur that their agreement was integrated in the letter of February 7th; that the letter constitutes a written contract.
The defendant's plea shows that complainant instituted an action in the New Jersey Supreme Court upon the contract as embodied in the letter and prosecuted the suit to judgment which was rendered in favor of defendant. Thus, says defendant, the complainant ratified the agreement as expressed in the letter and abandoned any right to have it reformed. And further, that the judgment is a complete and final adjudication of the controversy between the parties.
The pertinent parts of the letter read as follows:
"Confirming our conversation of February 4th, 1939, we wish to employ you as our Eastern Division Manager at a guaranteed income of $1250.00 per month, no fixed term, to be paid in the following manner:
"1. A salary of $625.00 per month, payable 15th and last day of each month.
"2. A commission of 2% on all net sales made each calendar month in 1939, during which you are employed, up to the amount of such sales made in like calendar month of 1938. On all net sales made in each calendar month of 1939 in excess of such sales made in like calendar month of 1938, we will pay you a commission of 1%. Said commissions to be paid on or before the 21st of the following month.
"3. The salary of $625.00 per month will be deducted from the total commissions earned.
"4. The commission of 1% on all net sales in excess of like month of 1938 will be paid when expenses do not exceed 15% of net sales made in any calendar month of 1939."
Complainant prays that paragraphs 1 and 3 be reformed by substituting $1,250 in the place of $625 as the amount of the monthly salary. Defendant concedes that the parties intended complainant's salary to be $1,250 per month, but this mistake is of no immediate importance since complainant actually was paid that sum each month he remained in defendant's employ.
The controversy centers in paragraph 2 of the letter, which complainant prays be reformed to read: *Page 90 
"A commission of 2 percent. on all net sales made each calendar month in 1939 and thereafter as long as you are employed by the company. On all net sales made in each calendar month of 1939 and thereafter, in excess of such sales made in like calendar month of 1938, we will pay you a commission of one percent. Said commissions are to be paid on or before the 21st day of the following month."
Finally, the bill prays that the fourth paragraph be expanded so as to cover not only months of 1939 but subsequent months.
It will be observed that reformation, if made, would have two distinct effects. First, it would entitle complainant to commissions on sales made in 1940 and 1941, as well as on sales made in 1939. Second, while under the contract as written, the commission on sales in excess of 1938 sales was only one per cent., under the reformed contract the commission on such excess sales would be one per cent. plus two per cent., or three per cent. in all.
The complaint in the Supreme Court showed that complainant had been paid in full for all services rendered in 1939 and that he was entitled to receive, under the agreement, for the years 1940 and 1941, $39,857, of which he had been paid $30,000 (the salary at $1,250 per month) leaving a balance due him of $9,857 besides interest. Annexed to the complaint is a schedule disclosing that he arrived at these figures by crediting himself with a commission of two per cent. on sales up to the amount of sales in corresponding months of 1938 and one per cent. only on excess sales. Complainant made the same assertion in the law action that he does in this court with respect to the period during which he was entitled to a commission on sales, namely, 1940 and 1941, in addition to 1939. But he took the position that on excess sales, the agreed commission was one per cent. and not three per cent. as he alleges in his bill.
The Supreme Court struck the complaint on the ground that it did not disclose a cause of action. The decision was based on a strict construction of the written contract, the court holding that the plaintiff was not entitled to commissions for years subsequent to 1939.
Until complainant began his action in the Supreme Court, *Page 91 
he had the option of abiding by the commission percentage stated in the written contract, one per cent. on excess sales, or insisting on the three per cent. which had orally been agreed to. He was confronted with an election of substantive rights rather than an election of remedies. 18 Am. Jur. 131. In this situation, any decisive act whereby he made a choice was final. A party cannot, either in the course of litigation or in dealingsin pais, occupy inconsistent positions. Where he has an election between rights which are mutually exclusive, he will be confined to that which he first adopts. The commencement of an action based upon one of the rights is conclusive evidence of an election. Blum Building and Loan Association v. Ingersoll,99 N.J. Eq. 563; Tremarco v. Tremarco, 117 N.J. Eq. 50. Or the case can be considered one of ratification. After a party becomes aware of a mistake in a written contract, if he acquiesces in the contract as written, he loses his right to reformation.23 R.C.L. 347. Complainant in his law action asserted in effect that the commission on excess sales to which he was entitled was one per cent. By so doing, he ratified the contract in that respect, and abandoned any right to have it reformed to make the commission three per cent. He will not be permitted in the present suit to take an inconsistent position.
Complainant, in the law action, claimed the same right which he now asserts with respect to the period of time during which the commission on sales would accrue. In order that the commencement of an action at law shall bar another remedy which the prosecuting party may have, the remedies must proceed from opposite and irreconcilable claims of right and must be so inconsistent that a party cannot logically assume to follow one without renouncing the other. Van Buren v. Fine, 101 N.J. Eq. 373; 103 N.J. Eq. 327. It is true that in the law action, complainant relied on the contract as written, but he contended for such a construction of the contract as would make it equivalent to the contract reformed pursuant to his prayer in this court. The institution of the law suit does not bar the suit for reformation. Green v. M. E.R.R. Co., 12 N.J. Eq. 165;Nazzaro v. Globe, c., Insurance Co., 127 N.J. Eq. 279.
Defendant cites Farmers *Page 92 Reliance Insurance Co. v. Overfield, 120 N.J. Eq. 180, which must be considered overruled so far as it is contrary to the cases above cited.
Although complainant prosecuted his action at law to judgment, he is not concluded by the judgment from seeking reformation. Whether a plaintiff is precluded by the judgment, depends upon the extent to which legal and equitable remedies have been merged in the state where the judgment is rendered. Restatement —Judgments § 66. The judgment bars the suit for reformation if the plaintiff could have obtained reformation in his original action on the contract. Royal Insurance Co. v. Stewart
(Ind.), 129 N.E. Rep. 853. But where the law court cannot give equitable relief, the judgment is not a bar. NorthernAssurance Co. v. Grand View Building and Loan Association,203 U.S. 106; 27 S.Ct. 27. That, of course, is the situation in New Jersey, and so it was assumed, without discussion, in Kelsey v.Agricultural Insurance Co., 78 N.J. Eq. 378, that reformation could be had after judgment on the contract had been granted to defendant. See Kupferschmidt v. Agricultural Insurance Co.,80 N.J. Law 441.
The result is that the plea is good as a partial defense only, namely, to so much of the bill as seeks reformation of the percentage of commissions. *Page 93