Complainant, Borough of Milltown, prays injunction against the City of New Brunswick from proceeding with a suit instituted against complainant in the First Judicial District Court of Middlesex County, in which suit the City of New Brunswick seeks to recover at the rate of $35 per million gallons for sewage chemically treated and disposed of by it under an agreement dated June 18th, 1914. This agreement the City of New Brunswick undertook on February 20th, 1945, to terminate by resolution of its Board of Commissioners, and in which resolution it was provided that commencing June 1st, 1945, the sum of $35 per million gallons *Page 553 
would be charged for treating and disposing of such sewage. The resolution also recites that since the agreement of June 18th, 1914, contained no provision as to its duration the agreement was terminable by either party on reasonable notice.
Heretofore on February 27th, 1942, the City of New Brunswick brought its bill of complaint in this court against the Borough of Milltown in which it sought to have the same agreement of June 18th, 1914, declared void and inoperative, set aside and canceled, and the Borough of Milltown restrained from further discharging sewage into its sewage system. City of NewBrunswick v. Borough of Milltown, 135 N.J. Eq. 310;38 Atl. Rep. 2d 288.
On the final hearing of this present cause, the facts not being in dispute, the single question presented was whether NewBrunswick v. Milltown, supra, is res judicata. Counsel for the City of New Brunswick concedes that a former judgment involving the identical matter between the same parties will work an estoppel, but contends that the rule of res judicata is not conclusive as to a question of law.
In New Brunswick v. Milltown, supra, it was contended that the agreement, since it contained no provision for its termination, was void as against public policy. After the opinion was handed down in that case, on application for rehearing on the ground that since the agreement contained no termination date it had been terminated on reasonable notice, the application for rehearing on this point was denied. So that the matters and things now presented were before the court in that case and passed upon and decided.
The resolution of the Board of Commissioners of the City of New Brunswick of February 20th, 1945, again attempts to terminate and end the contract as of May 31st, 1945, notwithstanding the fact that in New Brunswick v. Milltown, supra, this court decided that the contract is a valid subsisting contract made pursuant to statutory authority notwithstanding its duration is without limitation. We held:
"* * * The power delegated to the contracting municipalities by the statute contains no limitation with respect to the length of time for which such agreement may be made; *Page 554 
hence this agreement made pursuant to such statutory authority may not be condemned because its duration is without limitation."
And the decree provided "that said contract was not beyond complainant's power and authority to enter therein and that complainant is still bound thereby * * * and that said contract is not against public policy in that it imposes a perpetual obligation."
With counsel's contention that the terminability of the contract is purely a legal question and therefore not concluded by the final decree entered in the prior litigation, and that the law court now has a right to pass upon that question, I cannot agree. It was sought by the bill of complaint in that suit to have the agreement of June 18th, 1914, "decreed to be void, and inoperative as against your complainant, and that the same may be set aside and decreed to be given up and canceled," and that said agreement was no longer binding, so the question of whether or not the City of New Brunswick could terminate the agreement and treat the same as a nullity because of its perpetual character was as a question of law before the court and decided.
"Res adjudicata by a decree in equity is, doubtless, pleadable in the action at law, but the party holding the decree is not driven to that defense. * * *" And this because of the settled law that if, after a decree in equity, a party shall proceed at law for the same matter, equity will restrain him by injunction. Sarson v. Maccia, 90 N.J. Eq. 433, 438;108 Atl. Rep. 109.
In Mendel v. Berwyn Estates, 109 N.J. Eq. 11;156 Atl. Rep. 324, Vice-Chancellor Berry said:
"It would be intolerable to permit a suitor endlessly to litigate and relitigate his alleged grievance. At some point in the controversy he must accept the award of the court as final and conclusive, and that point is reached when a court of competent jurisdiction has heard and considered all that has been or could have been said by way of evidence and argument on the issues raised in the pleadings, and handed down its decision, and the decision remains unappealed. See Windolph v. Lippincott,107 N.J. Law 468. To continue a *Page 555 
course of litigious and contentious conduct by the institution of additional actions is not only grossly oppressive to the adversary, but an imposition on the court. It is an exhibition of contumacy meriting severe censure and further persistence in this line of conduct will very likely result in severe punishment for contempt. * * *"
In Lane v. Rushmore, 123 N.J. Eq. 531; 198 Atl. Rep. 872;affirmed, 125 N.J. Eq. 310; 4 Atl. Rep. 2d 55, it was held:
"* * * Injunction to restrain an action at law will lie where the subject-matter thereof has been considered by the Court of Chancery, and the same issues determined against the defendant. * * *"
See, also, Hurbanis v. Schultz (Court of Errors andAppeals), 128 N.J. Eq. 215; 15 Atl. Rep. 2d 886:
Where the record, as here, exhibits identity of parties, cause of action and subject-matter, the essential elements of resjudicata are exhibited. The action at law in the District Court sought to be enjoined exhibits an attempt to raise questions previously expressly determined by this court. Such attempts to relitigate the matter in the law courts will not be permitted.
"* * * The doctrine of res adjudicata rests on strong reasons of public policy, and also of private right. If, after decree in equity, a party shall proceed at law for the same matter, equity will restrain him by injunction. Such suit at law is treated as contempt of court, for it is gross oppression to vex another with a double suit for the same cause of action." Putnam v. Clark,34 N.J. Eq. 532.
Injunction will issue. *Page 556